UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

KATHLEEN M.,

                              Plaintiff,

v.                                                          8:20-cv-1040 (TWD)

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

APPEARANCES:                              OF COUNSEL:

CONBOY, MCKAY LAW FIRM            VICTORIA H. COLLINS, ESQ.
  *Counsel for Plaintiff*
407 Sherman Street
Watertown, NY 13601

SOCIAL SECURITY ADMINISTRATION    TIMOTHY SEAN BOLEN, ESQ.
OFFICE OF THE GENERAL COUNSEL
  *Counsel for Defendant*
J.F.K. Federal Building, Room 625
15 New Sudbury Street
Boston, MA 02203

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## <u>DECISION AND ORDER</u>

Kathleen M. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking

judicial review of a final decision of the Commissioner of Social Security ("Defendant" or

"Commissioner") denying her requests for disability and supplemental security benefits.  (Dkt.

No. 1.)  This case has proceeded in accordance with General Order 18 of this Court.  Pursuant to

28 U.S.C. § 636(c), the parties consented to the disposition of this case by a Magistrate Judge.

(Dkt. No. 4.)  Both parties filed briefs.  (Dkt. Nos. 11, 14.)  For the reasons set forth below, the

matter is reversed and remanded for further administrative proceedings.

## I.      BACKGROUND

Plaintiff was born in 1963 and has a master's degree in education.  (T. at 36-39, 161,

185.[1])  After working for eight years as a language instructor, Plaintiff was fired.  *Id*. at 45-46,

427.  She subsequently began working as an administrative assistant but struggled to meet her

supervisor's expectations.  *Id*. at 42, 302, 435, 438, 440, 454.  Despite transferring to another

department, Plaintiff continued to struggle.  *Id*. at 43, 49-50, 305, 355, 443.  Plaintiff's

psychologist, Dr. Brenda Greene, PhD., and psychiatrist, Dr. Mariam H. Asar, recommended

several medical leaves of absence.  *Id*.  at 29, 50, 302, 305-306, 443-45, 458, 463-68.  After

taking medical leave, Plaintiff stopped working on November 13, 2017.  *Id*. at 184, 444.

Plaintiff filed for disability insurance and supplemental security income on December

27th and 29th, 2017, respectively.  *Id*. at 161, 165.  Plaintiff claimed the following disabilities:

acid reflux, dysthymia, attention deficit hyperactivity disorder, atypical depression, general

anxiety, social anxiety, panic, fatigue, chronic migraines, gastroesophageal reflux disease, and

obesity.  *Id*. at 184.  The Commissioner denied Plaintiff's initial application, and she requested a

hearing before an Administrative Law Judge ("ALJ").  *Id*. at 94, 104.  ALJ Jennifer Smith held a

hearing on June 11, 2019, and Plaintiff testified along with vocational expert David Festa.  *Id*. at

33-63.  The ALJ denied Plaintiff's claim for benefits on July 3, 2019, and the Appeals Council

denied Plaintiff's request for review on July 7, 2020.  *Id*. at 1, 11-21.  Plaintiff now seeks this

Court's review.  (Dkt. No. 1.)

---

[1] The Administrative Transcript is found at Dkt. No. 10.  Citations to the Administrative
Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein
will be used rather than the page numbers the Court's CM/ECF electronic filing system assigns.
Page references to other documents identified by docket number are to the page numbers
assigned by the Court's CM/ECF electronic filing system.

## II.    STANDARD OF REVIEW[2]

In reviewing a final decision of the Commissioner, courts must first determine whether the correct legal standards were applied, and if so, whether substantial evidence supports the decision. *Atwater v. Astrue*, 512 F. App'x 67, 69 (2d Cir. 2013) (citing *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999)); *see also Brennan v. Colvin*, No. 13-CV-6338 AJN RLE, 2015 WL 1402204, at *10 (S.D.N.Y. Mar. 25, 2015).[3]  "Failure to apply the correct legal standards is grounds for reversal." *Pollard v. Halter*, 377 F.3d 183, 188-89 (2d Cir. 2004).  Accordingly, the reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).

If the ALJ applied the correct legal standards, the reviewing court must determine whether the ALJ's decision is supported by substantial evidence. *Tejada*, 167 F.3d at 773; *Bowen*, 817 F.2d at 985.  "Substantial evidence means more than a mere scintilla." *Sczepanski v. Saul*, 946 F.3d 152, 157 (2d Cir. 2020).  "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*; *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971).  If the ALJ's finding as to any fact is supported by substantial evidence, it is conclusive. *Diaz v. Shalala*, 59 F.3d 307, 312 (2d Cir. 1995).

[2] "Since the standards for determination of disability and for judicial review in cases under 42 U.S.C. § 423 and 42 U.S.C. § 1382c(a)(3) are identical, decisions under these sections are cited interchangeably." *Donato v. Sec'y of Dep't of Health & Hum. Servs. of U.S.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983).  Moreover, "[t]he regulations that govern the two programs are, for today's purposes, equivalent." *Smith v. Berryhill*, 139 S. Ct. 1765, 1772 (2019).  Rather than cite to relevant regulations under both 20 C.F.R. § 404.1501 *et seq.* (governing disability insurance) and 20 C.F.R. § 416.901 *et. seq.* (governing supplemental security income), the Court will cite to the disability insurance regulations. *See, e.g.*, *Sims v. Apfel*, 530 U.S. 103, 107 n.2 (2000).

[3] Unless otherwise indicated, in quoting cases, all alterations, internal quotation marks, emphases, footnotes, and citations are omitted. *See, e.g.*, *Sczepanski v. Saul*, 946 F.3d 152, 157 n.4 (2d Cir. 2020).

When inadequacies in the ALJ's decision frustrate meaningful review of the substantial evidence inquiry, remand may be appropriate. *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019); *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996). Remand may accordingly be appropriate where the ALJ has failed to develop the record, *Klemens v. Berryhill*, 703 F. App'x 35, 38 (2d Cir. 2017); *Rosa v. Callahan*, 168 F.3d 72, 82 (2d Cir. 1999), adequately appraise the weight or persuasive value of witness testimony, *Estrella*, 925 F.3d at 98; *Burgess v. Astrue*, 537 F.3d 117, 130 (2d Cir. 2008), or explain her reasoning, *Klemens*, 703 F. App'x at 36-38; *Pratts*, 94 F.3d at 39.

## III.    DISCUSSION

The ALJ denied Plaintiff's request for benefits because she determined Plaintiff could perform jobs that existed in sufficient numbers in the national economy. (T. at 21.) Plaintiff now challenges the ALJ's findings and conclusions concerning her mental residual functional capacity. *Compare id.* at 17 *with* Dkt. No. 11. This review accordingly focuses on evidence pertinent to the ALJ's evaluation of Plaintiff's mental residual functional capacity.

### A.    The ALJ's Evaluation of Medical Opinion Evidence

#### 1.    Medical Opinions

On February 6, 2018, state agency psychiatrist Dr. James Alpert issued an opinion on Plaintiff's medically determinable impairments and her mental residual functional capacity. (T. at 68-69, 72-75.) Based on his review of Plaintiff's medical records,[4] Dr. Alpert concluded Plaintiff had five medically determinable impairments: (i) obesity; (ii) migraine; (iii) depressive,

---

[4] Dr. Alpert's medical opinion appears to be based upon his review of medical records from the following sources: Massena Memorial Hospital; Brenda Greene, PhD; Dr. Mariam Asar; CPH Potsdam Primary Care; Canton Potsdam Hospital; and Jeffrey S. Aronowitz. (T. at 66-67, 73-74.) The Disability Determination Explanation does not clarify the dates of those medical records. *See id.*

bipolar and related disorders; (iv) anxiety and obsessive-compulsive disorders; and (v) attention

deficit/hyperactivity disorder. *Id.* at 68-69. Dr. Alpert further concluded these impairments

could reasonably be expected to produce Plaintiff's symptoms, and her statements concerning

the location, duration, intensity, and frequency of those symptoms were "Partially Consistent"

with the medical and non-medical evidence on record. *Id.* at 70.

Dr. Alpert summarized the case notes from Plaintiff's psychologist and psychiatrist (Drs.

Greene and Asar, respectively), noting Plaintiff's mental health diagnoses, her admission to the

emergency room in 2014 for suicidal ideation, her ongoing attempts to find the right medications

and treatment, and that she "has no[t] had any serious decompensations or psychiatric

hospitalizations recently." *Id.* at 73-74. Dr. Alpert also summarized issues related to Plaintiff's

mental health issues, including bankruptcies, divorces, failed relationships, and struggles at

work. *Id.* Based on his review of "[t]he totality of the data on file," Dr. Alpert concluded

Plaintiff could "understand and carry out work tasks and procedures with an adequate level of

persistence and pace, relate adequately with others and adapt to changes on the job adequately."

*Id.* at 74. More specifically, Dr. Alpert concluded Plaintiff had no limitations in her

understanding and memory, her ability for social interaction, and her ability to adapt. *Id.* at 72-

73.[5] According to Dr. Alpert, no medical opinion was more restrictive than his. *Id.* at 75.

---

[5] Dr. Alpert concluded Plaintiff was "Not significantly limited" in her ability to: (i) "carry out very short and simple instructions," (ii) "carry out detailed instructions," (iii) "sustain an ordinary routine with special supervision," (iv) "work in coordination with or in proximity to others without being distracted by them," and (v) "make simple work-related decisions." (T. at 72-73.) Dr. Alpert also concluded Plaintiff was "Moderately limited" in her ability to: (i) "maintain attention and concentration for extended periods;" (ii) "perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances;" and (iii) "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." *Id.* at 73.

Dr. Greene's first medical opinion, dated January 15, 2018, is such an opinion.  *See id.* at 393-95.[6]  At the outset of her medical opinion, Dr. Greene indicated that she treated Plaintiff once every two weeks for over 20 years.  *Id.* at 393.  Dr. Greene explained why she diagnosed Plaintiff with dysthymic disorder, major depressive disorder, and attention deficit/hyperactivity disorder.  *Id.*  She then summarized Plaintiff's clinical course, medications, current symptoms,[7] mental status,[8] activities of daily living,[9] and ability to function in a work setting.[10]  *Id.* at 393-94.  Dr. Green noted that although Plaintiff reported suicidal ideation, she had "no current intent," she agreed to "maintain a safety plan," and "[h]as a teenage son at home that she wants to live for."  *Id.* at 394.

Based upon this information, Dr. Greene opined that Plaintiff was limited in her ability to: (i) understand and remember things; (ii) follow simple or detailed instructions, follow

---

[6] Dr. Greene's medical opinion from January 15, 2018, appears in just three pages in the transcript.  (T. at 393-95.)  However, each page indicates that it is one of nine faxed pages.  *Id.*  The transcript only includes pages four through six of the nine-page faxed document containing Dr. Greene's January 15, 2018, medical opinion.  *Id.*

[7] High levels of depressed mood, lethargy, weepiness, anhedonia; poor concentration, judgment, problem-solving skills, sleep; fatigue; lack of motivation; indecisiveness; cannot get out of bed in the morning; anxiety; and panic.  (T. at 393.)

[8] Attitude: negative, worried; Behavior: low energy, sedentary; Thought: preoccupied with current life situation, inability to work, money woes, relationship woes; Mood: sad; Affect: sad and anxious; Attention: limited, gets distracted, loses train of thought; Concentration: limited, can't do simple things at the house, forgetful; Information: seems confused and forgetful more easily; Ability to perform calculations, serial sevens, etc.: at times, [within normal limits] and at other times, fumbles for answer.  (T. at 393-94.)

[9] Patient had difficulty getting out of bed.  Doesn't shower daily.  Wears pajamas all day.  Stressed by Christmas activities—no energy to get the boxes of decorations, teenage son did the tree.  No outdoor decorations put up this year (a big change).  Cooks minimally.  Attempts to clean but gets overwhelmed and stops and cries.  No hobbies.  (T. at 394.)

[10] Patient showed poor concentration at work.  Could not get to work on time.  Formally reprimanded by her boss.  Poorly organized at work, staying late to finish daily tasks.  Uncomfortable around work peers, increased anxiety, social phobia.  (T. at 394.)

schedules, work with others, follow a reasonable pace, sustain ordinary routine without

supervision, and maintain customary attendance and punctuality; (iii) interact with the public,

ask simple questions, accept supervisory instructions, get along appropriately with co-workers,

adhere to basic neatness and cleanliness; and (iv) respond appropriately to changes in the work

setting, be aware of hazards, travel/use public transportation, set realistic goals, and make plans

independently. *Id.* at 394-95. Dr. Greene provided reasoning for each of these conclusions. *See*

*id.*

   Dr. Greene issued her second medical opinion on December 13, 2018. *Id.* at 452-53.[11]

Dr. Green concluded Plaintiff had "No useful ability to function" in her capacity to perform six

categories of mental skills,[12] she was "Unable to meet competitive standards" in six categories of

mental skills,[13] and she was "Seriously limited, but not precluded" in four categories of mental

skills.[14] *Id.* at 452. Dr. Greene provided explanations for each of these conclusions, adding that

---

[11] This form, titled "Medical Opinion RE: Ability to do Work-Related Activities (Mental)"
appears in two pages of the transcript. (T. at 453-53.) Each page indicates that it is one of four
faxed pages. *Id.* The transcript includes pages three and four of the four-page faxed document.
*Id.*

[12] The "No useful ability to function" skills include the ability to: (i) maintain regular attendance
and be punctual within customary, usually strict tolerances; (ii) work in coordination with or
proximity to others without being unduly distracted; (iii) accept instructions and respond
appropriately to criticism from supervisors; (iv) get along with co-workers or peers without
unduly distracting them or exhibiting behavioral extremes; (v) respond appropriately to changes
in a routine work setting; and (vi) deal with normal work stress. (T. at 452.)

[13] The "Unable to meet competitive standard" skills include the ability to: (i) remember work-
like procedures; (ii) maintain attention for a two-hour segment; (iii) make simple work-related
decisions; (iv) complete a normal workday and workweek without interruptions from
psychologically based symptoms; (v) perform at a consistent pace without an unreasonable
number and length of rest periods; and (vi) ask simple questions or request assistance. (T. at
452.)

[14] The "Seriously limited, but not precluded" skills include the ability to: (i) understand and
remember very short and simple instructions; (ii) carry out very short and simple instructions;
(iii) sustain an ordinary routine without special supervision; and (iv) be aware of normal hazards
and take appropriate precautions. (T. at 452.)

Plaintiff "has shown a recalcitrant depression with severe anxiety, coupled with self-doubt and low self-confidence." *Id.* at 453.  Dr. Greene further noted that Plaintiff "is a very poor manager of time," she is "unable to get to work on time," and she was likely to miss more than four days of work a month due to her impairments.  *Id.*

### 2.    Other Medical Evidence

Plaintiff's remaining medical records demonstrate the various ways her mental health issues impacted her life.  For example, on October 1, 2019, Plaintiff's psychiatrist Dr. Asar wrote a letter wherein she summarized Plaintiff's symptoms, catalogued her daily activities, and identified "work related issues related to [Plaintiff's] mental illness." *Id.* at 29.  Dr. Asar explained Plaintiff was "late for work daily, missed 33 days of work in 2016, and missed 61 days of work in 2017 due to anxiety and panic attacks." *Id.*  Dr. Asar further explained Plaintiff "was prescribed 3 medical leaves for her mental diagnoses," she "was unable to properly complete her job related tasks . . . due to anxiety of speaking to others," she "struggled with being organized, staying on task, controlling her impulses, making decision, and meeting deadlines," she struggled with supervisors, and she "is very sensitive to any negative feedback." *Id.*  Dr. Asar accordingly opined, "Due to these symptoms, the patient is unable to work." *Id.*

Medical records from Drs. Asar and Greene indicate that Plaintiff frequently complained about problems at work, including her inability to complete the work she was assigned, her inability to get to work on time, her difficulty dealing with feedback from her supervisors, and her difficulties interacting with co-workers. *Id.* at 422, 424, 427, 435, 438, 440, 442-43, 454-56. Drs. Asar and Green treated Plaintiff for stress related to these work problems. *Id.* at 302, 305, 375.  Drs. Asar and Green recommended that Plaintiff take time off work to deal with her acute mental health crises. *Id.* at 302, 305-306, 442, 459, 463-68.  In addition to arriving late to every

appointment she had with Dr. Jeffrey Aronowitz in 2014, Plaintiff did not show for seven appointments with Dr. Greene, she frequently rescheduled, and she was often late. *Id.* at 291, 399-401, 403-406, 409-11, 417, 419-23, 429, 432, 435, 437, 439, 460-61.

On November 16, 2017, Dr. Greene "encouraged" Plaintiff to explore applying for social security benefits. *Id.* at 444. Plaintiff agreed and discussed her application with Dr. Asar on December 6, 2017. *Id.* at 389. Dr. Asar explained to Plaintiff that she "will not be happy if she is not working," encouraged her to consider part-time work, and "educated her on the Social Security Disability application on the computer and showed her how to access it." *Id.* Plaintiff "struggled to work on the paperwork for her SSD claim," completing the application "at the last possible minute." *Id.* at 459. After her boyfriend left her, Plaintiff cancelled her first social security appointments "because she was too distraught to drive the 2 hours and sit through two interviews." *Id.*

### 3.    The ALJ's Decision

After summarizing the findings from Dr. Greene's December 13, 2018, assessment, the ALJ concluded it was "more persuaded by Dr. Alpert's assessment" concerning Plaintiff's mental health limitations. *Id.* at 19. According to the ALJ, Dr. Alpert's opinion "appears to be better supported and more consistent with the record as a whole" and "he supports his opinions with a very thorough and detailed analysis of the evidence." *Id.* at 19. The ALJ concluded Dr. Alpert's medical opinion was more persuasive because, according to Dr. Alpert: (1) "the claimant has not had 'any serious decompensations or psychiatric hospitalizations recently' . . . as one might expect with limitations as those reported by Dr. Greene;" (2) "the claimant's difficulties seem to originate more from her romantic relationships than any underlying mental disorder;" (3) "the claimant's psychiatrist has encouraged her to work, but [she] has been

'adamant about wanting to apply for disability;'" and (4) Plaintiff researched how to apply for disability and asked her psychiatrist for help.  *Id.* at 19.  The ALJ did not assess the persuasive value of Dr. Asar's October 1, 2019, letter.  *Id.*

### 4.     Legal Standard

For disability claims filed on or after March 27, 2017, an ALJ's review of medical opinion evidence and prior administrative medical findings is governed by 20 C.F.R. § 404.1520c.  Under this regulation, applicable here,[15] the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources."  20 C.F.R. § 404.1520c(a); *see also Howard D. v. Saul*, No. 5:19-CV-01615 (BKS), 2021 WL 1152834, at *11 (N.D.N.Y. Mar. 26, 2021).  Rather, the ALJ must use five factors to determine the persuasiveness of the medical opinion evidence and prior administrative medical findings: supportability; consistency; relationship with the claimant; specialization; and other factors, such as "a medical source's familiarity with the other evidence in a claim."  20 C.F.R. §§ 404.1520c(a)-(c); *see also Howard*, 2021 WL 1152834, at *11.

The two most important factors in this analysis are supportability and consistency.  20 C.F.R. § 404.1520c(b)(2); *see also Howard*, 2021 WL 1152834, at *11.  The ALJ is specifically required to "explain how she considered the supportability and consistency factors" when determining the persuasiveness of "a medical source's medical opinions or prior administrative medical findings."  20 C.F.R. § 404.1520c(b)(2); *see also Howard*, 2021 WL 1152834, at *11. "If the ALJ fails adequately to explain the supportability or consistency factors, or bases her explanation upon a misreading of the record, remand is required."  *Rivera v. Comm'r of the Soc.*

---

[15]  Plaintiff filed her claim on December 27, 2017.  (T. at 161.)

*Sec. Admin.*, No. 19-CV-4630 (LJL) (BCM), 2020 WL 8167136, at *14 (S.D.N.Y. Dec. 30, 2020), *report and recommendation adopted*, No. 19-CV-4630 (LJL), 2021 WL 134945 (S.D.N.Y. Jan. 14, 2021); *see also Howard*, 2021 WL 1152834, at *12 (observing "courts have remanded where an ALJ did not adhere to the regulations") (collecting cases).

Under the supportability factor, the more a medical opinion or prior administrative medical finding is reinforced by "relevant . . . objective medical evidence and supporting explanations," the "more persuasive" it will be.  20 C.F.R. § 404.1520c(c)(1); *Carmen M. v. Comm'r of the Soc. Sec. Admin*, No. 20-CV-06532-MJR, 2021 WL 5410550, at *4 (W.D.N.Y. Nov. 19, 2021) ("The supportability factor asks how well a medical source supported their opinion(s) with objective medical evidence and supporting explanations.").  Under the consistency factor, a medical opinion or prior administrative medical finding is "more persuasive" if it is consistent "with the evidence from other medical sources and nonmedical sources in the claim."  20 C.F.R. § 404.1520c(c)(2); *Galo G. v Comm'r of the Soc. Sec. Admin*, No. 3:20-CV-1011 (FJS), 2021 WL 5232722, at *4 (N.D.N.Y. Nov. 9, 2021) ("The regulations provide that with respect to consistency, the more consistent a medical opinion is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion will be.").

"An ALJ must consider, but is not required to discuss, the three remaining factors when determining the persuasiveness of a medical source's opinion."  *Howard D.*, No. 2021 WL 1152834, at *11; *see also* 20 C.F.R. §§ 1520c(a), (b)(2).  However, where the ALJ has found two or more divergent medical opinions to be equally well supported and consistent with the record, the ALJ must articulate how he or she evaluated the three remaining factors.  20 C.F.R. § 404.1520c(b)(3).

### 5.     The ALJ Erred

The ALJ did not err in failing evaluate the persuasive value of Dr. Asar's October 1, 2019, letter.  (T. at 17-19, 29.)  However, the ALJ failed to explain the persuasive value she assigned to Dr. Greene's medical opinion.  *See* 20 C.F.R. § 404.1520c(b)(2); *see also Howard*, 2021 WL 1152834, at *11.  The ALJ's evaluation of Dr. Alpert's medical opinion is also flawed because it is not supported by substantial evidence.  *See* 20 C.F.R. § 404.1520c.  These errors warrant remand.  *Rivera*, 2020 WL 8167136, at *14; *see also Christopher B. v. Saul*, No. 8:19-CV-00905 (BKS), 2020 WL 5587266, at *19 (N.D.N.Y. Sept. 18, 2020).

#### a.     Dr. Asar Did Not Issue a Medical Opinion

Dr. Asar is a medical source because she is a licensed physician who practices in New York, but she did not issue a medical opinion.  20 C.F.R. §§ 404.1502(a)(1), (d); *see also* T. at 29, 294-315, 359-92.  "A medical opinion is a statement from a medical source about *what you can still do* despite your impairments and whether you have one or more impairment-related limitations or restrictions."  20 C.F.R. § 404.1513(a)(2) (emphasis added); *see also Michael H. v. Saul*, No. 5:20-CV-417 (MAD), 2021 WL 2358257, at *5-6 (N.D.N.Y. June 9, 2021) (discussing the new definition of "medical opinion").  Dr. Asar's October 1, 2019, letter addressed Plaintiff's impairment-related limitations, but it did not discuss *what Plaintiff could still do* despite her impairments.  (*See* T. at 29.)

Although Dr. Asar's October 1, 2019, letter presents a close call, it is not a "medical opinion" under 20 C.F.R. § 404.1513(a)(2) because it does not address what Plaintiff could still do despite her impairments.  *See Michael H.*, 2021 WL 2358257, at *6 (concluding a doctor's statement was not a medical opinion because "it does not address what Plaintiff is capable of doing in spite of his limitations, nor does it discuss Plaintiff's limitations with any specificity.");

*see also Ramirez v. Saul*, No. 20-CIV-2922 (NSR) (JCM), 2021 WL 4943551, at \*11 (S.D.N.Y.

July 2, 2021), *report and recommendation adopted*, No. 20-CV-2922 (NSR), 2021 WL 4264253

(S.D.N.Y. Sept. 20, 2021) ("Dr. Schwartz's statement is not a medical opinion, as it neither

discusses what Plaintiff can still do despite his impairments, nor whether Plaintiff has

impairment-related limitations or restrictions on his ability to perform work-related tasks.");

*Shawna Ann J. v. Comm'r of Soc. Sec.*, No. 1:19-CV-1098 (WBC), 2021 WL 733804, at \*4-5

(W.D.N.Y. Feb. 25, 2021) (concluding a medical source's "list of symptoms" was not a medical

opinion).  Absent a discussion of what Plaintiff could still do despite her impairments, this letter

is more properly considered "Other medical evidence" under 20 C.F.R. § 404.1513(a)(3).  *See,*

*e.g.*, *Michael H.*, 2021 WL 2358257, at \*5 ("However, for claims filed after March 27, 2017,

Congress removed the much more general language defining a medical source statement and

added it to the definition of 'other medical evidence.'"); *Shawna Ann J.*, 2021 WL 733804, at \*4

(concluding a list of symptoms was "not a medical opinion, but rather other medical evidence").

The ALJ accordingly did not err in failing to address the persuasive value of Dr. Asar's October

1, 2019, letter.

      b.  *The ALJ Failed to Evaluate Dr. Greene's Medical Opinion with*
          *the Supportability and Consistency Factors*

    However, the ALJ did err in failing to explain how she considered the supportability and

consistency factors when evaluating Dr. Greene's medical opinion.  *See* 20. C.F.R. §

404.1520c(b)(2).  The ALJ was specifically required to explain how she considered these factors

when determining the persuasiveness of Dr. Greene's medical opinion.  20 C.F.R. §

404.1520c(b)(2); *see also Howard*, 2021 WL 1152834, at \*11-12.  Rather than doing so, the ALJ

explained she was "more persuaded by Dr. Alpert's assessment, as it appears to be better

supported and more consistent with the record as a whole."  (T. at 18-19.)  This comparative

conclusion offers no insight into how the ALJ evaluated Dr. Greene's medical opinion under the supportability and consistency factors. *See* 20 C.F.R. § 404.1520c(b)(2); *Howard*, 2021 WL 1152834, at \*12. Remand is required because the ALJ failed to set forth these crucial factors with sufficient specificity to enable this Court to decide whether the persuasive value assigned to Dr. Greene's medical opinion is supported by substantial evidence. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984); *see also Rivera*, 2020 WL 8167136, at \*14.

c.     *Substantial Evidence does not Support the ALJ's Evaluation of Dr. Alpert's Medical Opinion*

The ALJ also erred in evaluating the medical opinion of Dr. Alpert. (*See* T. at 19.) Substantial evidence does not support the ALJ's unexplained conclusion that Dr. Alpert's opinion was "more consistent with the record as a whole." *See id.*; *see also Galo G.,* 2021 WL 5232722, at \*4 ("The regulations provide that with respect to consistency, the more consistent a medical opinion is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion will be."). For example, Dr. Alpert concluded Plaintiff was only "Moderately limited" in her ability to "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace." (T. at 73.) However, this conclusion is inconsistent with the evidence that: (i) Plaintiff was fired from her job as a teacher, *id.* at 45-46, 42; (ii) Plaintiff struggled to perform her responsibilities as an administrative assistant, *id.* at 42-43, 49-50, 302, 305, 355, 435, 443, 438, 440, 454; (iii) Plaintiff frequently arrived late to work and medical appointments, *id.* at 291, 399-401, 403-406, 409-11, 417, 419-23, 429, 432, 435-40, 442-43, 454-55, 460-61; (iv) Plaintiff "missed 33 days of work in 2016, and missed 61 days of work in 2017 due to anxiety and panic attacks," *id.* at 29; (v) both Dr. Asar and Dr. Greene gave Plaintiff several medical leaves of absence from work for acute mental health episodes, *id.* at 29, 50, 302, 305-306, 443-45, 458,

463-68; and (vi) Dr. Greene opined that Plaintiff's mental residual functional capacity was significantly limited, *id.* at 393-95, 452-53.

The ALJ also concluded Dr. Alpert's opinion "appears to be better supported." (T. at 19; *see also Carmen M.*, 2021 WL 5410550, at *4 ("The supportability factor asks how well a medical source supported their opinion(s) with objective medical evidence and supporting explanations.").) The ALJ failed to explain why, based upon objective medical evidence, Dr. Alpert's opinion *appeared* to be better supported. (T. at 19.) The ALJ did not identify any objective medical evidence that supported Dr. Alpert's opinion, and this Court is unaware of any that does. *See* 20 C.F.R. § 404.1502(f) (defining "Objective medical evidence.").

The ALJ further concluded that Dr. Alpert's opinion was supported by "a very thorough and detailed analysis of the evidence." (T. at 19.) In support of this conclusion, the ALJ points to several *observations* Dr. Alpert made in his medical opinion. *Id.* But the observations highlighted by the ALJ are just that—observations. *See id.* They are not examples of "objective medical evidence," and they are not "supporting explanations." *See* 20 C.F.R. § 404.1520c(c)(1). The supportability factor focuses on whether a medical opinion is reinforced by "relevant . . . objective medical evidence and supporting explanations." *Id.* It does not focus on whether a medical opinion is reinforced by observations untethered from objective medical evidence and supporting explanations. *See id.* The Court nonetheless addresses each observation, in turn.

The ALJ found persuasive Dr. Alpert's observation "that the claimant has not had 'any serious decompensations or psychiatric hospitalizations recently' . . . as one might expect with limitations as extreme as those reported by Dr. Greene." (T. at 19.) Dr. Alpert offered no opinion on whether "one might expect" Plaintiff to experience a recent or ongoing

"decompensations or psychiatric hospitalizations." *See id.* at 74-75. The ALJ is the source of that expectation, not Dr. Alpert. *Compare id.* at 19, *with id.* at 74-75. Even if Dr. Alpert had opined that such an expectation was reasonable, given the limitations reported by Dr. Greene, the absence of a recent psychiatric hospitalization does not support an affirmative finding that Plaintiff was capable of work. *See, e.g., Demars v. Comm'r of Soc. Sec.*, 841 F. App'x 258, 262 (2d Cir. 2021).[16] Moreover, these absences do not outweigh the extensive evidence indicating that Plaintiff's mental health issues have impacted her ability to work. *Id.*; *see also* T. at 29, 463-68.

The ALJ also found persuasive Dr. Alpert's observation that Plaintiff's "difficulties seem to originate more from her romantic relationships than any underlying mental disorder." (T. at 19.) Dr. Alpert's medical opinion includes no such finding or observation. *Id.* at 73-74. In concluding otherwise, the ALJ misread the record. *See generally Selian v. Astrue*, 708 F.3d 409, 418-19 (2d Cir. 2013) (remanding where the ALJ misconstrued the record and her decision was not supported by substantial evidence). The ALJ's finding on this point is accordingly unsupported by substantial evidence. (*Compare* T. at 19, *with id.* at 73-74.)

Finally, the ALJ found persuasive Dr. Alpert's observation that Dr. Asar "encouraged [Plaintiff] to work," but she was "adamant about wanting to apply for disability." (T. at 19.) In relevant part, Dr. Alpert observed that Dr. Greene first encouraged Plaintiff to apply for

---

[16] Defendant argues this observation is relevant because "the degree of treatment Plaintiff received was not consistent with the extreme limitations assessed by Dr. Green[e]." (Dkt. 14 at 22.) The ALJ's evaluation of Dr. Alpert's opinion does not discuss or analyze Plaintiff's treatment regimen with Dr. Asar or Dr. Greene. (T. at 19.) Defendant's reliance on the conservative treatment rule is accordingly misplaced. (*See* Dkt. 14 at 22, citing *Netter v. Astrue* 272 F. App'x 54, 56 (2d Cir. 2008).) Moreover, the conservative treatment rule is a product of the treating physician rule, and it does not appear in 20 C.F.R. § 404.1520c—which governs the ALJ's evaluation of medical opinion evidence in this case. Its applicability here is accordingly suspect.

disability.  *Id.* at 74.  Plaintiff, who was "thinking about not working or working part-time when she gets disability," then asked Dr. Asar for help.  *Id.*  Plaintiff researched "what mental disorders she should have and brought [Dr. Asar] the papers."  *Id.*  Dr. Asar "encourage[ed] her to work at least part time" and "educated her on the Social Security application."  *Id.* at 74.  Aside from listing these facts, Dr. Alpert offers no opinion on why they are relevant or how they support his medical opinion.  *See id.*  In other words, this recitation of facts lacks a "supporting explanation."  *See* 20 C.F.R. § 404.1520c(c)(1).  Moreover, this Court is unaware of any rule or precedent that bars a claimant from social security benefits when she follows the advice of her trusted psychologist to apply for such benefits.  Substantial evidence accordingly does not support the ALJ's conclusion that Dr. Alpert's medical opinion was "better supported . . . with a thorough and detailed analysis of the evidence."  (T. at 19.)

### B.    Symptoms and Residual Functional Capacity Determination

The ALJ's errors in evaluating medical opinions impacted her conclusions about Plaintiff's symptoms and Plaintiff's residual functional capacity.  *See, e.g.*, *Anne F. v. Saul*, No. 8:19-CV-774, 2020 WL 6882777, at *13 (N.D.N.Y. Nov. 24, 2020); *Rodriguez v. Colvin*, No. 3:14-CV-1552, 2016 WL 1275647, at *7 (N.D.N.Y. Mar. 31, 2016).  This Court cannot conduct a meaningful review of those conclusions because the ALJ's decision lacks analysis of Plaintiff's symptoms in relation to the evidence.  *See Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013); *Pratts*, 94 F.3d 34, 39.  Moreover, the findings listed at the end of the ALJ's residual functional capacity determination are not supported substantial evidence.  (*See* T. at 19.)

### 1.    Medical Opinion Errors Impacted the ALJ's Conclusions

To determine a claimant's residual functional capacity, the ALJ must consider "all of the relevant medical and other evidence," "including limitations that result from . . . symptoms."  20

C.F.R. §§ 404.1545(a)(3), (d); *see also* 20 C.F.R. § 404.1529(c); SSR 16-3P, 2017 WL 5180304, at *12.  The ALJ's evaluation of a claimant's symptoms in turn requires the ALJ to consider medical opinion evidence.  *See* 20 C.F.R. §§ 404.1529(c)(3)-(4) (requiring the ALJ to consider evidence from medical sources when evaluating the intensity, persistence, and limiting effects of symptoms); SSR 16-3P, 2017 WL 5180304, at *6-7.  When the ALJ conducts a flawed evaluation of medical opinion evidence, it necessarily impacts the ALJ's evaluation of symptoms.  *See* 20 C.F.R. §§ 404.1529(c)(3)-(4); *see also, e.g.*, *Anne F.*, 2020 WL 6882777, at *13; *Christopher B. v. Saul*, No. 8:19-CV-00905 (BKS), 2020 WL 5587266, at *19 (N.D.N.Y. Sept. 18, 2020).  A flawed evaluation of medical opinion evidence also impacts the ALJ's assessment of a claimant's residual functional capacity.  *See* 20 C.F.R. § 404.1545(a)(3) ("We will assess your residual functional capacity based on all of the relevant medical and other evidence"); *see also, e.g.*, *Rodriguez*, 2016 WL 1275647, at *7; *Mortise v. Astrue*, 713 F. Supp. 2d 111, 127 (N.D.N.Y. 2010).

Here, the ALJ denied Plaintiff's claim at step five, concluding she had sufficient residual functional capacity to perform work in the national economy.  (T. at 20-21.)  However, the ALJ's errors in evaluating the medical opinions of Drs. Greene and Alpert necessarily influenced her evaluation of Plaintiff's symptoms.  *See* 20 C.F.R. §§ 404.1529(c)(3)-(4); *see also, e.g.*, *Anne F.*, 2020 WL 6882777, at *13.  Those errors also influenced the ALJ's evaluation of Plaintiff's residual functional capacity.  *See* 20 C.F.R. § 404.1545(a)(3); *see also, e.g.*, *Rodriguez*, 2016 WL 1275647, at *7.  Remand is accordingly warranted.  *Anne F.*, 2020 WL 6882777, at *13; *Rodriguez*, 2016 WL 1275647, at *7.

### 2.    The ALJ's Decision Frustrates Meaningful Review

The ALJ's residual functional capacity determination frustrates meaningful review because it lacks "specific reasons for the weight given to the [Plaintiff's] symptoms."  SSR 16-3P, 2017 WL 5180304, at *10; *see also Cichocki*, 534 F. App'x at 76.  "In evaluating an individual's symptoms, it is not sufficient for [ALJs] to make a single, conclusory statement that 'the individual's statements about his or her symptoms have been considered' or that 'the statements about the individual's symptoms are (or are not) supported or consistent.'"  SSR 16-3P, 2017 WL 5180304, at *10; *see also Natashia R. v. Berryhill*, No. 3:17-CV-01266 (TWD), 2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019) ("conclusory statements regarding Plaintiff's capacities are not sufficient").  Instead, the decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms."  SSR 16-3P, 2017 WL 5180304, at *10; *see also* SSR 96-8P, 1996 WL 374184, at *7 ("The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).").  The ALJ's decision does not satisfy this standard.  (T. at 17-19.)

The ALJ began her residual functional capacity analysis by listing Plaintiff's symptoms. (T. at 17.)  She then concluded that, based upon her consideration of those symptoms, "the record as a whole does not support limitations beyond those provided for within the above-found residual functional capacity."  *Id.*  Without explaining how Plaintiff's symptoms compared to evidence in the record, the ALJ concluded her residual functional capacity finding was "consistent with the objective medical and other evidence of record."  *Id.*  This conclusory

analysis is inadequate.  *See* SSR 16-3P, 2017 WL 5180304, at *10; *see also Natashia R.*, 2019

WL 1260049, at *11.  It lacks "specific reasons for the weight given to [Plaintiff's] symptoms."

SSR 16-3P, 2017 WL 5180304, at *10; *see also* SSR 96-8P, 1996 WL 374184, at *7.  It does not

explain which symptoms the ALJ found consistent with record evidence, and which symptoms

the ALJ found inconsistent with record evidence.  (*See* T. at 17; *see also Natashia R.*, 2019 WL

1260049, at *11; SSR 16-3P, 2017 WL 5180304, at *10; SSR 96-8P, 1996 WL 374184, at *7.)

And it does not address Plaintiff's symptoms under the factors set forth in 20 C.F.R. §§

404.1529(c)(3)(i)-(vii).  *See* SSR 16-3P, 2017 WL 5180304, at *4-12 (explaining the factors and

their application).  Absent a more specific explanation of the ALJ's analysis, this Court cannot

meaningfully review whether it is supported by substantial evidence.  *Pratts*, 94 F.3d at 39.

Remand is accordingly warranted.  *Id.*

### 3.      The ALJ's Findings are Unsupported by Substantial Evidence

        After the ALJ reached her conclusions about Plaintiff's symptoms and the medical

opinion evidence, she listed several findings.  (T. at 19.)  Although not explicitly tied to the

ALJ's evaluation of Plaintiff's symptoms, these findings may have impacted that evaluation.  *See*

*id.*  Yet, these findings do not appear to be supported by substantial evidence.

        For example, the ALJ found that Plaintiff's "statements to her psychiatrist show she

retains a reasonable ability to concentrate and apply information."  *Id.* at 19.  Plaintiff suffers

from depression, anxiety, attention deficit/hyperactivity disorder, and obsessive-compulsive

disorder.  *See id.* at 68, 292, 362, 393.  Her ability to communicate with her therapist of 20 years

and concentrate during therapy sessions does not demonstrate that she "retains a reasonable

ability to concentrate and apply information" in a work setting.  *See generally* 20 C.F.R. § Pt.

404, Subpt. P, App. 1, 12.00C(6)(b) ("Your ability to complete tasks in settings that are highly

structured, or that are less demanding or more supportive than typical work settings does not

necessarily demonstrate your ability to complete tasks in the context of regular employment

during a normal workday or work week."); 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00D(3)(a)

("The fact that you have done, or currently do, some routine activities without help or support

does not necessarily mean that you do not have a mental disorder or that you are not disabled.").

It means she "retains a reasonable ability to concentrate and apply information" when

communicating with her therapist of 20 years.  On the flip side, substantial evidence

demonstrates Plaintiff has struggled to consistently concentrate and apply information in work

settings.  (*See generally* T. at 29, 42-43, 49-50, 302, 305-306, 355, 435, 443-45, 438, 440, 454,

463-68.)

  The ALJ also found that Plaintiff's "ability to socialize and interact with others is

demonstrated by her own admission that she has an 'active social life," including "romantic

relationships . . . female friends and a seemingly good relationship with her children."  (T. at 19.)

Here, the ALJ misreads the record again.  *See generally Selian*, 708 F.3d 409, 418-19.  Plaintiff

never testified that she had an active social life.  *See id.* at 40; *accord* Dkt. 14 at 22.  Instead,

when the ALJ stated "You seem to have a fairly active social life," Plaintiff responded, "I do?  I

don't really have much of one now."  (T. at 40; *see also id.* at 306, 313 (indicating that Plaintiff's

close friend died of cancer in 2016, and another close friend cut ties with her in 2017).)

Furthermore, Plaintiff's commitment to romantic and familial relationships has limited bearing

on her mental residual functional capacity.  *See generally Van Dyne v. Saul,* No. 20-CV-260

(MKB), 2021 WL 1210460, at *16 (E.D.N.Y. Mar. 31, 2021) ("Plaintiff's efforts to pursue the

things that are important to her and to engage in self-care do not establish that she is not

disabled.") (collecting cases); *see also* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00D(3)(b)

(explaining an individual's ability to spend time with familiar people "in a simple and steady routine . . . does not necessarily show how [she] would function in a work setting on a sustained basis").

Finally, the ALJ notes that Plaintiff "has a well-documented history of attending her appointments on time, as scheduled, since her alleged onset date." (T. at 19.) Plaintiff's ability to engage in self-care by attending therapy sessions with Drs. Asar and Greene does not establish that she is not disabled. *Van Dyne*, 2021 WL 1210460, at *16; *see also* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00C(6)(b). It establishes that she has recently been on time to therapy sessions, despite a record of no-shows, cancellations, and tardiness. (*See* T. at 291, 399-401, 403-406, 409-11, 417, 419-23, 429, 432, 435, 437, 439, 460-61; *see also Estrella v. Berryhill*, 925 F.3d 90, 97 (2d Cir. 2019) ("Cycles of improvement and debilitating symptoms of mental illness are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working.").) Outside the context of Plaintiff's ability to engage in self-care, substantial evidence demonstrates she was frequently late to work, she "missed 33 days of work in 2016, and missed 61 days of work in 2017 due to anxiety and panic attacks." *Id.* at 29, 422, 440, 442-43, 454-56.

In short, to the extent the ALJ offered these findings in support of her residual functional capacity and symptom analysis, they are not supported by substantial evidence.

## IV.    REMAND

On remand, the ALJ should begin by re-evaluating the persuasive value of the medical opinions pursuant to 20 C.F.R. § 404.1520c. The ALJ should articulate how persuasive she finds each medical opinion under the supportability and consistency factors. *Id.* at § 404.1520c(b)(2).

If the ALJ finds equally persuasive two or more medical opinions that diverge on a specific issue, she should articulate how persuasive she found those opinions under the remaining factors. *Id.* at § 404.1520c(b)(3).  The ALJ should then assess the intensity, persistence, and limiting effects of Plaintiff's symptoms, considering "all of the medical and nonmedical evidence, including the information described in § 404.1529(c)."  20 C.F.R. § 404.1545(e); *see also id.* § 404.1545(a)(3); *see generally* SSR 16-3P, 2017 WL 5180304, at \*4-10.

## V.     CONCLUSION

Considering the foregoing, the Court finds the Commissioner's decision was not based upon correct legal standards and substantial evidence does not support the determination that Plaintiff was not under a disability within the meaning of the Social Security Act.

**WHEREFORE**, it is hereby

**ORDERED** that the decision of the Commissioner is **REVERSED AND REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for proceedings consistent with this Decision and Order; and it is further

**ORDERED** that the Clerk provide a copy of this Decision and Order to the parties in accordance with the Local Rules of the Northern District of New York.

**IT IS SO ORDERED**.

Dated:          January 10, 2022
                Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge